**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RYAN HENDERSON** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:25-cv-01924** |
| | § | |
| | § | |
| **LOKI LABS, INC.** | § | **JURY DEMAND** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES RYAN HENDERSON, hereinafter referred to as "Plaintiff" or "Henderson" bringing this cause of action under the Uniformed Services Employment and Reemployment Rights Act (USERRA), found in the United States Code at Title 38, Part III, Chapter 43 and under Chapter 431 of the Texas Government Code. For cause of action, Plaintiff respectfully shows unto the Court the following:

## I.
## PARTIES

1. Plaintiff RYAN HENDERSON is a former employee of the Defendant who resides in San Antonio, Bexar County, Texas, which is within this District. Moreover, all occurrences made the basis of this suit occurred

in San Antonio, Bexar County Texas while Plaintiff resided in Bexar County, Texas.

2. Defendant LOKI LABS, INC. is a Chicago, Illinois based business specializing in cybersecurity consulting, managed security services, and research and development. Loki Labs serves both federal and commercial customers providing penetration testing, red teaming, blue teaming, threat hunting, vulnerability assessment, malware analysis, reverse engineering, risk analysis, and data analysis. Defendant may be served with process by the clerk of the court by serving its registered agent by certified mail, return receipt requested as follows: Rupert B. Anderson, 1215 Walkers Way, San Antonio, Texas 78216. However, a waiver is first being sent before service is requested.

## II.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the claim founded on federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has asserted claims based on improper conduct that occurred in San Antonio, Bexar County, Texas while Plaintiff was employed in San Antonio, Bexar County, Texas arising under federal law under the Uniformed Services Employment

and Reemployment Rights Act (USERRA), found in the United States Code at Title 38, Part III, Chapter 43.

4. Moreover, this court has supplemental jurisdiction over claims arising under state law, which would include claims brought under Chapter 431 of the Texas Government Code under 28 U.S.C section 1367.

5. Venue is proper in the Western District of Texas, San Antonio Division because the Defendant does business in this District and all incidents made the basis of Plaintiff's complaint occurred within this District.

## III.
## MISNOMER/MISIDENTIFICATION

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## RESPONDEAT SUPERIOR

7. Employees involved in this cause of action were at all times described herein employees of Defendant and were always acting in the

course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of *Respondeat Superior*.

**V.**

**APPLICABLE LAW AND CLAIM FOR USERRA VIOLATIONS**

8. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3).

9. Section 4311 of USERRA provides, in relevant part, that a person "who is a member of, … performs, has performed, … or has an obligation to perform service in a uniformed service shall not be denied … any benefit of employment by an employer on the basis of that membership, … performance of service, or obligation."

10. Section 4312 of USERRA provides, in relevant part, that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits."

11. Section 4313 of USERRA (further codified by 20 C.F.R. § 1002.191) provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other

job perquisites, that he or she would have attained if not for the period of service.

12. Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.

13. Section 4316 further provides that a person who is reemployed "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

14. "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. § 1002.193.

15. The facts will demonstrate Defendant LOKI knowingly and willfully violated USERRA by, among other ways, failing to reemploy Plaintiff with the pay, benefits, seniority, and other job perquisites, that he would have attained if not for his period of service and/or treated him

differently than similarly situated employees who had not participated in such service, including subjecting Plaintiff to a hostile environment, harassment and retaliation based on his service, in violation of § 1002.19, which provides "[a]n employer must not retaliate against an individual by taking any adverse employment action against him or her because the individual has taken an action to enforce a protection afforded any person under USERRA; testified or otherwise made a statement in or in connection with a proceeding under USERRA; assisted or participated in a USERRA investigation: or, exercised a right provided for by USERRA."

16. The facts will demonstrate LOKI further knowingly and willfully violated USERRA by, among other ways, denying Plaintiff employment benefits and bonuses and reemployment "on the basis of" his "obligation to perform service in a uniformed service.

17. The facts will demonstrate LOKI knowingly and willfully violated USERRA by, among other ways, failing to reemploy Plaintiff in a position of like seniority, status, and pay after his service.

18. The facts demonstrate LOKI further knowingly and willfully violated USERRA by, among other ways, denying Plaintiff employment

benefits and reemployment "on the basis of" his "obligation to perform service in a uniformed service."

19. As a direct and proximate result of the conduct of Defendant as set forth herein, Plaintiff has suffered injuries and damages including but not limited to: (1) loss of past earnings and benefit and bonuses, and loss of future earnings and benefits, all to his damage in an amount to be proven at trial.

20. Plaintiff alleges such violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. § 4323(d)(1)(C).

21. Pursuant to 38 U.S.C. § 4323(h), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and other litigation expenses, including court costs and pre and post-judgment interest.

## VI.

## FACTUAL BACKGROUND

22. Plaintiff Ryan Henderson is a former employee of the Defendant. Plaintiff was employed with Loki Labs from May 4, 2024, until his termination on April 29, 2025. Plaintiff served as the senior principal cyber security engineer earning $160,000 per year in addition to a bonus estimated

to be up to 10% of his earnings. His involvement in the reserves, however, resulted in a reduced bonus as indicated by the facts.

23. Plaintiff first served in the military starting in June 2008. He separated from active duty and switched duty to the reserves in December 2023. He has been active in the Air Force Reserves since that date.

24. Plaintiff alleges Defendant's infractions of USERRA and retaliatory acts including at least the following: (1) Deliberately hindering his ability to take Military Service Leave; (2) attempting to re-write their Military Service Leave Policy that in itself violates USERRA; (3) deduction of PTO without consultation and notification to offset overpayment during reserve duty; (4) inclusion of military service/status and leave in determining his annual pay/bonus determination, which resulted in a reduction of his bonus; (5) falsely claiming an incident response for an alleged sensitive data breach as a pretextual termination for cause; and (6) denying his military leave and requiring Plaintiff to use paid time off during his military service resulting in overpayment of military leave. Plaintiff asserts that his military service and required reserves duty was a motivating factor in Defendant's retaliation and the creation of a hostile work environment and disparaging comments related

to his military service obligations, which ultimately led to his unlawful termination.

25. Pursuant to 38 U.S.C. § 4311(a)-(b), a person alleging discrimination under USERRA must establish they: (a) they are protected as result of past, present, or future affiliation with the uniformed services, (b) an adverse employment action by the employer or prospective employer occurred, and (c) there was a causal relationship between the claimant's protected status and the adverse employment action. The claimant need not show that their status was the sole factor in the employment action; they need only show their status was a motivating factor in the employment action. (38 U.S.C. § 4311(c)(1); 20 C.F.R. § 1002.23). Plaintiff can meet the requirements.

26. Plaintiff Henderson began employment with Loki Labs from May 4, 2024, and continued until his wrongful termination on April 29, 2025. Plaintiff Henderson contends his service in the Air Force Reserves and required and requested service-related leave was a motivating factor in discrimination, harassment, retaliation and his subsequent termination.

27. The primary actor involved is Defendant Loki's Chief Commercial Officer Claudia Iannazzo, who routinely made hostile and

negative comments (publicly and privately) demonstrating a negative perception of employees taking time away from the company for military service leave. Specific comments included: "he is electing to take this duty, not being mandated to do it" or, "you don't fully appreciate how expensive you are when you go on military duty" (Comment occurred on 29 Jan during call to discuss business operations).

28. On January 29, 2025, Plaintiff Henderson attempted to schedule military leave that would occur on Feb 27th and 28th, 2025. Henderson had verbally provided prior notice to supervisor Bryan Anderson of required duty. Plaintiff Henderson had discovered that the "military service leave" option was no longer available to him at Loki.

29. Henderson contacted Loki finance representative Bekezela Hlabangana on the 30th to see if there was a system error or if he had been directed to remove the accounting code. He replied that he was directed to do so by Claudia Iannazzo who also stated that Plaintiff must take Paid Time Off (PTO) to attend military duty, a USERRA infraction.[1]

---

[1] Violation of Section 4316 (d) / 20 CFR 1002.153 **(Vacation Leave)**
Service members must, at their request, be permitted to use any vacation leave that had accrued before the beginning of their military service instead of unpaid leave. However, service members cannot be forced to use vacation time for military service.

30. Upon discovery, Henderson promptly notified his direct supervisor Bryan Anderson of the "knowing or unknowing violation" of USERRA at the direction of Loki CCO Claudia Iannazzo. Plaintiff Henderson calculated the leave he had taken the previous year, most of which was approved by Claudia Iannazzo in advance of her hiring Henderson with Loki Labs.

31. Supervisor Bryan Anderson indicated that he would bring it to the attention of Loki CEO Tom Valerio and would resolve the issue by the following week. Plaintiff Henderson indicated that he was obligated to report violations of USERRA but would provide time for the company to rectify the infraction.

32. The following week, while waiting for resolution and while searching for an unrelated company policy. Plaintiff Henderson stumbled across the "Work in Progress" Service Leave document. It was last edited by Claudia Iannazzo on January 31, 2025, the day after Henderson inquired about the lack of the service leave option. The edits created by Claudia Iannazzo contained several clauses that are in direct violation of USERRA. This action not only violated USERRA but was also in violation of the Loki Employee Handbook Guidelines.

33. COO Claudia Iannazzo was under the impression that Henderson was getting paid from the company for time off.

34. CCO Claudia Iannazzo did investigate and did determine that Henderson was paid approximately $4,000 during military leave across CY 2024. She determined this to be a mistake from finance/accounting, not from Henderson, and that he had adhered to company policy throughout the entirety of the process.

35. It was reported that in a closed meeting, Claudia Iannazzo said the U.S. Government was wrong about this and that she would fight the Government over this policy (other members present included Bryan Anderson, Bekezela Hlabangana and Tom Valerio).

36. The day after Plaintiff Henderson notified his supervisor of what he perceived to be an infraction of USERRA, Henderson discovered that Loki COO Claudia Iannazzo initiated modification of the Loki Labs Military Service Leave Policy. Henderson provided updates to CEO Tom Valerio specifically highlighting what Henderson believed to be a violation of USERRA[2].

---

[2] Violation of Section 4311 (b) / 20 CFR 1002.19 **(Reprisals)**
Employers are prohibited from retaliating against anyone (whether or not they have performed military service) who:

- files a complaint under the law;
- testifies, assists or otherwise participates in an investigation or proceeding under the law; or

37. For example, the Section 2.3.1 Unpaid Leave policy was modified to provide: Employees are responsible for diligently checking payslips to ensure they are not inadvertently paid during MSL, and immediately notifying the COO and finance if they have been overpaid. If the Company becomes aware, within 36 months of the relevant leave, that an individual has been overpaid or not checked their payslips in respect of the MSL period, the Company will calculate the amount of overpayment and may adjust the employee's upcoming salary, garnish wages, apply anticipated compensation (including bonuses) or make such other arrangements the Company considers reasonable in the circumstances to adjust the employee's compensation to account for such over payment.[3]

38. The proposed policy was not a general policy but a proposed policy specific to military service leave. The proposed policy is targeted in nature when done this way.

---

- exercises any right provided under the law.

whether or not the person has performed military service.

[3] Violation of Section 4311 (c) / 20 CFR 1002.22 (**Standard/Burden of Proof)**
If an individual's past, present, or future connection with the service is a motivating factor in an employer's adverse employment action against that individual, the employer has committed a violation, unless the employer can prove that it would have taken the same action regardless of the individual's connection with the service. The employer bears the burden of proving that it would have taken the adverse action in the absence of the person's service connection or exercise of any USERRA right.

39. The proposed policy also provided as follows: Section 2.3.2 Notice. "Unless unusual circumstances arise beyond the reasonable control of the individual (eg unscheduled recall to duty), employees must notify in writing: a) the COO and their line manager by no later than Jan 31 annually, of the intended MSL needs for the forthcoming calendar year; b) Direct line managers and the COO of upcoming MSL no less than 30 days period to MSL commencing; c) Provide a copy of written orders relating to MSL. Personnel who purport to go on MSL without furnishing written evidence of orders to the COO and HR will have abandoned their position with the Company and will be deemed to have resigned effective the first day of unauthorized absence from the Company[4].

40. The section violates Section 4312 (a)(1) / 20 CFR 1002.85. No notice is required if the giving of notice is otherwise impossible or

[4] Violation of Section 4312 (a) (1) / 20 CFR 1002.85 **(Advance Notice)**
The law requires employees to provide their employers with advance notice of military service, with some exceptions. Notice may be either written or oral. It may be provided by the employee or by an appropriate officer of the branch of the military in which the employee will be serving. However, no notice is required if:

- Military necessity prevents the giving of notice; or
- The giving of notice is otherwise impossible or unreasonable.

"Military necessity" for purposes of the notice exception is defined in regulations of the Secretary of Defense as "a mission, operation, exercise or requirement that is classified, or a pending or ongoing mission, operation, exercise or requirement that may be compromised or otherwise adversely affected by public knowledge." See 32 CFR 104.3.

unreasonable. No notice is required if military necessity prevents the giving of notice; or the giving of notice is otherwise impossible or unreasonable.

41. Moreover, the policy violates Section 4312 (a)(1) / 20 CFR 1002.85, which provides notice may be either oral or written.

42. Proposed section 2.3.3 Continuation of Benefits also violated USERRA. The proposal provided that the Company will continue its usual health benefit programs and contributions in respect of an individual on military service leave for 31 days or less per year[5].

43. Section 2.3.6 Discretionary Bonuses, which also violated USERRA provided that "Individuals who take more than 3 weeks MSL in any calendar year may have any discretionary end of year bonus adjusted to accounted for their reduced contributions to the Company's financial

[5] Violation of Section 4317 / 20 CFR 1002.164 / 20 CFR 1002.166 **(Health Benefits)**
The law provides for health benefits continuation for persons who have coverage under a health plan in connection with their employment who are absent from work to serve in the military.
If a person's health plan coverage would terminate because of an absence due to military service, the person may elect to continue the health plan coverage for up to 24 months after the absence begins or for the period of service (plus the time allowed to apply for reemployment), whichever period is shorter.
The person cannot be required to pay more than 102 percent of the full premium for the coverage. If the military service was for 30 or fewer days, the person cannot be required to pay more than the normal employee share of any premium.

outcomes or their own inability to meet set performance targets (eg billability targets) as a result of being absent and on MSL.[6][7][8]

44. Plaintiff was required to take 15 days of Annual Tour to have a qualifying year, this does not include standard drill days. Those who are part of units that do not drill strictly on the weekend will be in constant jeopardy of the discretionary bonuses clause.

45. Proposed section 2.4 Compliance also violated USERRA and provided "Any employee found to have falsely claimed MSL, received payment during MSL[9], or failed to have provided advance written notice and

[6] Violation of Section 4311 / 20 CFR 1002.18 - .23 (**Discrimination**)
Section 4311(a). Employment discrimination because of past, current, or future military obligations is prohibited. The ban is broad, extending to most areas of employment, including:

- Hiring
- Promotion
- Termination
- Benefits

[7] Violation of Section 4311 (a) / 20 CFR 1002.18 **(Protected Persons)**
The law prohibits discrimination against past members, current members, and persons who apply to be a member of any of the branches of the uniformed services.

[8] Violation of Section 4311 (c) / 20 CFR 1002.22 **(Standard/Burden of Proof)**
If an individual's past, present, or future connection with the service is a motivating factor in an employer's adverse employment action against that individual, the employer has committed a violation, unless the employer can prove that it would have taken the same action regardless of the individual's connection with the service. The employer bears the burden of proving that it would have taken the adverse action in the absence of the person's service connection or exercise of any USERRA right.

[9] Violation of Section 4311 (c) / 20 CFR 1002.22 **(Standard/Burden of Proof)**

evidence of orders before going on leave[10], may be subject to disciplinary action, up to and including termination of employment."

**INCLUSION OF MILITARY SERVICE/STATUS IN ANNUAL PAY/BONUS DETERMINATION**

46. In late March, Loki Labs CEO Bryan Anderson provided Plaintiff Henderson with his "2025 SALARY and 2024 END OF YEAR BONUS" letter where he indicated that Loki Labs provided Henderson a 2024 end of year bonus of $4,410.00 that had been offset against the equivalent amount that he "owed the company due to overpayments to you in 2024". It was contrary to CEO Bryan Anderson's previous mention that the company was going to consider it a wash…or Tom Valerio (previous CEO) indicating that Henderson would garner his full bonus due to his significant sacrifice and performance working for Loki/Catalisto.

[10] Violation of Section 4312 (a) (1) / 20 CFR 1002.85 **(Advance Notice)**
The law requires employees to provide their employers with advance notice of military service, with some exceptions. Notice may be either written or oral. It may be provided by the employee or by an appropriate officer of the branch of the military in which the employee will be serving. However, no notice is required if:

- Military necessity prevents the giving of notice; or
- The giving of notice is otherwise impossible or unreasonable.

"Military necessity" for purposes of the notice exception is defined in regulations of the Secretary of Defense as "a mission, operation, exercise or requirement that is classified, or a pending or ongoing mission, operation, exercise or requirement that may be compromised or otherwise adversely affected by public knowledge." See 32 CFR 104.3.

47. Henderson asked CEO Bryan Anderson, “am I to understand that my performance for 2024 equates to 2.4% of the company’s authorized 10%?”

48. Bryan mentioned that this “bonus” was not reflective of Henderson’s performance, indicating that Henderson had better performance than what is reflected on the letter, however he would not earn a bonus (or pay increase for the following reasons: (1) Henderson was with the company for less than a year; (2) The company has been in a different financial position since Tom (previous CEO) departed[11]: (3) Even he did not get that much of a bonus his first year; (4) He was one of the highest paid members of the company (and other potentially more qualified individuals make less); and (5) **Plaintiff Henderson had been with the company for even less than 6 months if you count time away for reserve duty.** [12]

49. Henderson reminded CEO Bryan Anderson that he had been Henderson’s supervisor for the duration, and that in each conversation they had (noting that in several instances the meetings needed to be rescheduled),

[11] **Note:** It should be noted that other members of the company received partial and/or full bonuses

[12] Violation of Section 4311 / 20 CFR 1002.18 - .23 **(Discrimination)**

Section 4311(a). Employment discrimination because of past, current, or future military obligations is prohibited. The ban is broad, extending to most areas of employment, including:

- Hiring
- Promotion
- Termination
- Benefits

he observed superior performance and would task Henderson to handle his more challenging issues because he knew Henderson would "get the job done." Henderson and Anderson did not have a formal annual feedback, but in the verbal…the area he needed to work on (because Claudia would yell at him if he didn't mention it) was his briefing style.

50. Plaintiff Henderson asked if this was because of the tension between Claudia and Henderson. He indicated "no", it had nothing to do with that. He also indicated that all executives agreed to the bonus payouts. However, Plaintiff Henderson had talked to Tom Anderson and he indicated that he did not agree to the bonuses and had walked away from the conversation (and the company) due to Claudia's repeated maltreatment of Henderson. The letter was also signed by Bryan Anderson and not Tom Valerio.

**DEDUCTION OF PTO WITHOUT CONSULTATION OR NOTIFICATION TO OFFSET OVERPAYMENT DURING MSL**

51. On April 2, 2025, while looking at his leave balance in anticipation of scheduling leave, Plaintiff Henderson noticed that his leave balance was unusually low. Henderson continued to investigate by searching through his previous months' balances and discovered that on February 6,

2025, Loki CCO Claudia Iannazzo deducted 55 hours of PTO from Henderson's accrued balance. The sum remainder of his balance was then 06 minutes. The comment left in the description stated "offsetting PTO against the MSL that was taken as paid leave (MSL is unpaid leave)"[13][14]. This action was taken without consulting or notification to Henderson. Henderson discovered the activity just over 2 months later. When discovered, Henderson brought this to his supervisor's attention, the new CEO Bryan Anderson, quoting that the overpayment (he specifically mentioned $4,410 which equates to being overpaid for roughly 7.5 days) had already been deducted from his annual bonus, and that this deduction was a "double-tap." Anderson had also indicated that the overpayment was "a wash" and there would be no reimbursement or collection. Henderson requested return of his PTO.

[13] Violation of Section 4311 / 20 CFR 1002.18 - .23 **(Discrimination)**
Section 4311(a). Employment discrimination because of past, current, or future military obligations is prohibited. The ban is broad, extending to most areas of employment, including:

- Hiring
- Promotion
- Termination
- Benefits

[14] Section 4311 (c) / 20 CFR 1002.22 **(Standard/Burden of Proof)**
If an individual's past, present, or future connection with the service is a motivating factor in an employer's adverse employment action against that individual, the employer has committed a violation, unless the employer can prove that it would have taken the same action regardless of the individual's connection with the service. The employer bears the burden of proving that it would have taken the adverse action in the absence of the person's service connection or exercise of any USERRA right.

Anderson indicated that he did not know why Claudia deducted Henderson's PTO, and that he would engage with her to determine the issue.

52. Bryan Anderson scheduled a meeting for the following week, a time at which Henderson was on Military Service Leave. Henderson informed Anderson of such, and they re-coordinated to convene the following week. The meeting included Loki CCO Claudia Iannazzo, CEO Bryan Anderson, and Plaintiff Henderson. During this meeting that took place around April 12, 2025, Bryan Anderson and Claudia Iannazzo proceeded to pull up an excel document (dated early April) that showed a breakdown of what MSL Henderson had taken the year before, how much he was overpaid, and why taking the PTO was justified. Jannazzo indicated that the total overpayment was closer to $8,000 and that the balance from PTO only accounted for half. The remainder was deducted from his annual bonus.

53. Henderson did not attempt to "fight" the information or the situation, fearing the reprisal that would likely occur from Claudia Iannazzo. Henderson did ask if the system had been fixed and clarified that Henderson had followed the processes as specified by the employee handbook and other guidance *[even the ones that violated USERRA]*. Henderson didn't want another situation where his wages or PTO were being garnished without

notification for reasons that were not his doing. Claudia Iannazzo indicated that it was a manual process for finance and that she needed Henderson's help to validate that he had been paid the correct amount from his paystubs. Henderson informed her that he still do not have the ability to access his paystubs, that he had informed her initially, and informed finance multiple times. She said that Henderson needed to contact customer support and concluded the meeting.

54. Henderson later followed up with customer support multiple times and they indicated they do not assist employees directly, only employers. When Henderson notified Claudia Iannazzo and Bryan Anderson, Bryan reached back out saying he would look into it for resolution.

**INCIDENT RESPONSE FOR ALLEGED SENSITIVE DATA BREACH/TERMINATION FOR CAUSE**

55. On or about April 15, 2025, Loki Labs CCO Claudia Iannazzo elected to start an Internal Incident Response to conduct "clean-up" of the following documents. She determined that the documents 1) contained *sensitive* data, and 2) should not be proliferated or be stored without being password protected or encrypted. Between April 16 and 17, 2025, they proceeded to conduct the following: (1) Identify where the documents were

currently stored; (2) Determine who the documents was sent to and how it was sent; (3) Delete all copies of the documents with the exception of one which would be password protected and only granted access to herself and CEO Bryan Anderson.

56. They completed the above activities on April 17, 2025 and Claudia Iannazzo asked Plaintiff Henderson to draft a "file note" annotating the steps they took to remove the document from their systems in the event there was an issue or investigation.

57. During this process, Claudia Iannazzo was determined to treat the document as if it contained sensitive data and that the data was mishandled for the above reasons. Bryan Anderson recommended they treat the data as CUI. Henderson asserts this was a self-assessment of sensitive data; no classifying authority had provided a classification on the data contained within and the three of them, Bryan Andesron, Claudia Iannazzo and Plaintiff, were not classifying authorities. The document was drafted by Henderson and reviewed by the former CEO and Facility Security Officer (FSO) who is responsible for validating data handling. He did not consider the document to contain sensitive data and believes they handled the data appropriately.

58. They operated in accordance with the classification guide which states, "(U) Classification may be applied only to information that is owned by, produced by or for, or is under the control of the United States Government." In short, classification pertains to U.S. data and/or U.S. systems. All of what they were working on was a foreign mission partner's data, it also did not leverage any U.S. data in the process. The classification guide specifies that when handling foreign government data, you handle and treat it at the level of classification. The foreign government did not mark the data/report and they treated it with the same level of classification (unclassified) as they did and with the same authorized transmission mediums for the assignment (email, slack, signal).

59. When Henderson attempted to ask Bryan Anderson about the Incident Response, he retorted that he isn't that close to it and was intentionally keeping his distance. "Claudia is running that", he said.

60. Plaintiff Henderson asserts the Incident Response activity was exaggerated and used by Claudia Iannazzo as a pretextual reason for termination. She also claimed that Plaintiff Henderson did not have proper authority or permission to share the report with Third Party Nationals concurrently supporting the host nation partner. This was incorrect and

documentation was provided highlighting the series of approvals and NDAs garnered before sharing the report. The specific approvals were verbal, but there is substantial documentation captured via email and signal confirming these approvals and authorizations.

61. On April 28, 2025 at 3:30 CST, Bryan Anderson called Plaintiff Henderson and verbally informed him that his employment with Loki would be coming to an end at the end of the week (May 2nd). He then explained that he was going to give Henderson the option to resign in lieu of termination to "not have a ding against me." He said Henderson didn't have to decide now, but could provide an answer tomorrow.

62. Early morning on the 29th, Henderson received the termination for Cause letter, indicating that the option to resign had been rescinded and Henderson was terminated effective immediately.

63. The letter was signed by Bryan Anderson, CEO of Loki Labs. However the document was drafted by Claudia Iannazzo, as indicated by the Adobe Sign envelope.

**<u>REASONS FOR TERMINATION</u>**

64. The termination letter indicated: "You chose to send Company owned documents to your personal email address. There is no justification for this action. As a result, the Company is rescinding its offer to allow you to resign and is proceeding with termination for cause. Between 29 October 2024 and 16 April 2025, while participating in a US Department of State-funded program, you engaged in conduct that, to the best of our knowledge and belief, failed to meet critical security obligations concerning sensitive information belonging to a foreign government. Specifically, it appears that you: Did not encrypt or password protect the documents containing the sensitive information; Did not transmit such information using Company-approved encrypted channels on at least 13 occasions; on the remaining occasion, an unauthorized application (signal) outside Company control was used, where access was not appropriately restricted; Did not limit distribution of the sensitive information, with at least 13 recipients identified, 10 of whom appear not to have a legitimate need to know; Disclosed information to third parties without ensuring confidentiality agreements were in place (specifically with Cysiam personnel at the time of disclosure); Failed to obtain necessary written authorization from the foreign government prior to disclosure, as required by applicable agreements; Did not redact or otherwise minimize the sensitive

footprint of the information disclosed; and Did not take sufficient steps to restrict access to this documentation on Company systems.

65. The letter went on to contend: These actions violated: a) Your signed Confidentiality Agreement with the Company; b) Catalisto's confidentiality agreement with its prime contractor and to the foreign government; c) Applicable federal standards for the handling of sensitive materials under US government contracts; d) Industry-standard practices and internal Company policies regarding data protection; and e) The duties and expectations associated with your Top Secret security clearance and senior position on the program.

66. The letter continued: Despite your training, experience, and clearance level, it appears that you did not exercise the required level of care in handling sensitive information. Including senior executives on some transmissions, without securing proper review, may have created an appearance of oversight without ensuring actual authorization. This pattern of behavior reflects repeated lapses in judgement rather than isolated error. Your actions created a material risk of unauthorized disclosure, which may have harmed the interests of a U.S. ally and adversely affected the Company's/

Catalisto's standing with its foreign government partners, its prime contractor and the U.S. Department of State.

67. The facts demonstrate that prior to terminating Plaintiff Henderson, Claudia Iannazzo had exhibited a pattern of discriminatory, harassing ad retaliatory behavior towards Plaintiff. Bryan Anderson had admitted to Henderson (before he assumed the role of CEO) that at times he felt Henderson was targeted or was not being treated fairly.

68. Loki's claim that transmittal of this document to Henerson's personal email was the ultimate decision for his termination is false. In the termination letter, Loki indicates that they offered Henderson the opportunity to resign in lieu of termination (on 28 April at approximately 3:30 CST). In this memo (dated April 29th), they then indicate they discovered that Henderson sent the documents to his personal email and as such were rescinding the offer to allow him to resign and are proceeding with termination for cause. The documents Henderson sent to his personal email were the File Notes 1 and 2.

69. Loki's decision to terminate Henderson occurred before their discovery and illegal attempt to terminate for cause. Within the document is a detailed summary of events pertaining to the two documents in which Loki

was incorrectly claiming that Henderson handled incorrectly. It does not contain any technical information that could be construed as "sensitive", merely the names of the final reports (which are unclassified) and the people involved. Henderson sent himself the document for protection in the event the company attempted to fire him unlawfully. These reports were not shared with anyone outside the company (in accordance with the Company handbook - until he was terminated at which point he shared with only those involved with the legal proceedings.

70. Members who sent company documents to his personal email include Claudia Iannazzo (which she did prior to Henderson officially becoming an employee; his first day of employment was May 13, 2024. Iannazzo sent emails, correspondence, and attachments between Claudia's work account and Henderson’s personal account between April 22, 2024 and May 3rd, 2024. In these emails are also Tom Valerio (previous CEO of Loki Labs) and Todd Spires (CRDF Director of Cyber and Digital Resilience Programs). Claudia Iannazzo clearly has not been terminated, and furthermore, was the author of Plaintiff’s termination letter.

71. Finally, the Employee handbook indicates that employees are not to share confidential or company related documents to unauthorized

individuals (which Henderson did not). Iannazzo and Anderson on behalf of Loki are claiming that sending the document to Henderson's own personal email is prohibited (which is not stated in the Employee handbook and or in any Loki Data Handling guide). The employee handbook does state "This policy is not intended to restrict an employee's right to discuss, or act together to improve, wages, benefits and working conditions with co-workers or in any way restrict employees' rights under the National Labor Relations Act.".

72. As set out above, it is clear that Plaintiff Henderson was the victim of repeated USERRA violations and suffered retaliation, discrimination, harassment and retaliation in violation of USERRA, including his eventual wrongful termination after his reports and complaints.

## VII.

## ATTORNEYS' FEES

73. It was necessary for Plaintiff to retain the services of the undersigned attorney to prosecute this action. Plaintiff is entitled to recover the reasonable and necessary attorney's fees, expert fees and court costs to prosecute this action as authorized under USERRRA and the Texas Government Code. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

a. Preparation and trial of the claim, in an amount the jury deems reasonable;

b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

c. An appeal to the 5th Circuit Court of Appeals, in an amount the jury deems reasonable;

d. Making or responding to an Application for Writ of Certiorari to the Supreme Court of the United States, and attorneys' fees in the event that application for Writ of Certiorari is granted, in an amount the jury deems reasonable; and,

e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## VIII.
## DAMAGES

74. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant:

a. Lost wages bonuses and benefits in the past and future.

b. Compensatory damages for mental anguish and emotional distress related to the claims and liquidated damages

c. Damages for injury to his reputation and business reputation;

d. All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff;

e. All reasonable and necessary costs incurred in pursuit of this suit;

f. Expert fees as the Court deems appropriate;

g. Pre and Post judgment interest as allowed by law;

## IX.
## JURY DEMAND

75. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## XIV.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein and that upon a final hearing hereof, a judgment be rendered for Plaintiff and against the Defendant, for the actual damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, pre-judgment interest, post-judgment interest, liquidated damages, and for such other and further relief to which Plaintiff may be justly entitled.

**Respectfully Submitted,**

**/s/ *Adam Poncio***
**Adam Poncio**
**State Bar No. 16109800**
aponcio@ponciolaw.com
**Alan Braun**
**State Bar No. 24054488**
**abraun@ponciolaw.com**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Rd., Suite 310**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**

**ATTORNEYS FOR PLAINTIFF**